**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**MEGAN PEARCE, individually and as next friend of BABY B, her infant child,**

      Plaintiffs,                          CIVIL ACTION NO. 16-cv-11499

      v.                                 DISTRICT JUDGE GEORGE CARAM STEEH

**MICHAEL EMMI,**                   MAGISTRATE JUDGE MONA K. MAJZOUB

      Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL [15] AND
DENYING PLAINTIFFS' MOTIONS TO QUASH [30, 31]**

This matter is before the Court on Plaintiffs' Motion to Compel the Oakland County Sheriff to Comply with the Subpoena to Produce Cody Fuhrman's I-Phone (docket no. 15), Plaintiffs' Motion to Quash Defendant's Subpoena to Metro PCS (docket no. 30), and Plaintiffs' Motion to Quash Defendant's Subpoena to Verizon Wireless (docket no. 31.)[1] The Oakland County Sheriff's Office filed a Response (docket no. 19) to Plaintiffs' Motion to Compel. Defendant Emmi filed a Response (docket nos. 36, 37) to each of Plaintiffs' Motion to Quash. This matter has been referred to the undersigned for all pretrial proceedings. (Docket no. 24.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.     Background**

---

[1] Also before the Court are Plaintiffs' Motion for Show Cause Hearing against Nest Labs, Inc. (docket no. 14), and Plaintiffs' Motion to Extend Discovery Deadlines (docket no. 38), which the Court will address separately.

Plaintiffs Megan Pearce and her infant child filed this action against Hazel Park Police Officer Michael Emmi, in his individual capacity, on April 26, 2016. They assert claims under 42 U.S.C. § 1983, the Federal Wiretapping Act, and provisions of Michigan state law. (Docket no. 1.) They allege that Defendant Emmi viewed Plaintiff Pearce, in the nude, breastfeeding her child on two occasions in March 2016 through a "Nest Cam" that Plaintiff Pearce installed in the child's nursery.

According to Plaintiffs, the Nest Cam is a motion-sensitive security camera that allows users to monitor their homes remotely using a cell phone or other device that connects to the Internet. Users receive a notification through their device whenever the Nest Cam is activated, and, when a user is monitoring the Nest Cam's feed through their device, an external light on the Nest Cam flashes. (*Id.* at 2.) The Nest Cam also "retains IP address logs regarding device access." (Docket no. 14 at 2.) Plaintiff Pearce claims that the only devices which had access to her Nest Cam were her cell phone, her iPad, and the cell phone belonging to her fiancé, Cody Fuhrman, who is also the child's father. Mr. Fuhrman had recently been arrested on March 2, 2016, in connection with a marijuana growing operation, and had his cell phone seized by the Oakland County Sheriff's Office. Defendant Emmi participated in the execution of the search warrant on Mr. Fuhrman's property, along with other officers from the Hazel Park Police Department and the Oakland County Task Force Narcotics Enforcement Team. (Docket no. 1 at 4.)

Plaintiff Pearce claims that, as she was breastfeeding her child, she noticed that the Nest Cam light began to flash, indicating that a device was connected to the camera's feed. Because she was in possession of her own phone and iPad, she believes that the device was Mr. Fuhrman's cell phone. She then allegedly looked up the location of the phone using the "Find

my iPhone" application on her laptop, and discovered that Mr. Fuhrman's phone was located in what was revealed to be the residence of Defendant Emmi.  (*Id.* at 2-3.)  At that point, she claims that she attempted to "disable the phone's monitoring capability, and thought she was successful."  (*Id.* at 3.)  Later that evening, however, also while breastfeeding her child, Plaintiff Pearce claims that she noticed the external light began flashing again.  This time, she was on the phone with her brother and allegedly exclaimed, "Oh my God, someone is watching me again!"  She claims that immediately thereafter, the light stopped flashing, indicating that the device was disconnected from the Nest Cam.  (*Id.*)

## II.  Plaintiffs' Motion to Compel

District Judge George Caram Steeh entered a scheduling order for this case on June 29, 2016. (Docket no. 13.)  On July 15, 2016, Plaintiffs delivered a subpoena to the Oakland County Sheriff's Office (the "OCSO"), requesting production of Mr. Fuhrman's cell phone "for forensic examination" by Mr. Mark St. Peter, a certified forensic computer examiner.  (Docket nos. 15 at 3; 15-1 at 2.)  Plaintiffs requested that the phone be produced on May 16, 2016, at 3:00 p.m., at Computing Source, Mr. St. Peter's place of business in Madison Heights, Michigan.  (Docket no. 15-1 at 2.)  The OSCO objected to the subpoena, prompting Plaintiff to file the instant Motion to Compel.

A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26.  *See, e.g.*, *Martin v. Oakland Cty.*, No. 2:06-CV-12602, 2008 WL 4647863, at *1 (E.D. Mich. Oct. 21, 2008).  Under Rule 26, parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  "Relevant evidence" is evidence having the tendency to make the existence of any fact that is of

3

consequence to the determination of the action "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). If the party served with the subpoena objects or fails to respond, Rule 45 provides the party who served the subpoena the means to file a motion to compel. Fed. R. Civ. P. 45(d)(2)(B)(i).

Additionally, under Rule 45, the party issuing the subpoena is required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). To determine whether a burden is undue, a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it. *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 2887177, at *2 (E.D. Mich. Sept. 7, 2012) (citing *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999); *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994). Non-party status is a relevant factor. *Lowe*, 2012 WL 2887177, at *2 (citing *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005)).

Plaintiffs contend that the "data information" on Mr. Fuhrman's phone is "critical to this case as it will help to establish that the [iPhone] was activated at the times Plaintiffs were being spied upon." (Docket no. 15 at 2-3.) The OCSO does not dispute that the information Plaintiffs seek in the subpoena is relevant to their claims; nor does the OCSO argue that producing the phone for inspection creates an undue burden. It objects to the subpoena and the Motion to Compel on the grounds that the phone could contain information useful to the prosecution of Mr. Fuhrman, and that Plaintiff Pearce's interests are "clearly aligned" with Mr. Fuhrman's in his

criminal matter. (Docket no. 19 at 7-9.) Therefore, the OCSO argues, allowing an expert retained by Plaintiff Pearce to inspect the phone creates an "end run" around the rules of criminal discovery applicable in Mr. Fuhrman's prosecution (which are more limited than the broad rules of civil discovery applicable here), and furthermore creates a risk that the information on the phone will be destroyed or damaged before the OCSO has had an opportunity to review the information. (*Id.*) Although the OCSO has had the phone in its possession for several months now, it claims to have been unable to access the phone's contents because the phone is passcode protected and Mr. Fuhrman has refused to provide the passcode. (*Id.* at 8.) The OCSO proposes that Plaintiff be required to provide the passcode to the OCSO and to allow an officer to download the phone's memory before allowing Mr. St. Peter to inspect the phone. (*Id.* at 8-9.)

The OCSO also argues that allowing Mr. St. Peter to review the information stored on the phone will adversely affect the OCSO's ability to use the phone at trial because the phone's chain of custody will be destroyed, and that a stay of civil discovery is appropriate whenever such discovery will "'adversely affect'" a related criminal investigation and prosecution. (Docket no. 19 at 7 (quoting *United States v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars and Seventy Two Cents ($463,497.72) in U.S. Currency*, 604 F. Supp. 2d 978, 981 (E.D. Mich. 2009) (quoting the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 981(g)(1)))).[2]

The Court finds that the relevance of the information potentially stored on the phone outweighs the risks identified by the OCSO, and the Court will order that the phone be produced by an OCSO representative for forensic examination by Mr. St. Peter only, at his place of

---

[2] The Court notes that the statute at issue in *U.S. v. $463,497.72*, the Civil Asset Forfeiture Reform Act of 2000, is not applicable here. The case at bar is neither a civil forfeiture proceeding nor is it "related" to Mr. Fuhrman's state court criminal proceeding. *See* 18 U.S.C. § 981(g)(1).

business, Computing Source. To address the OCSO's valid concerns, however, the Court will also adopt the OCSO's alternative proposal, in part, and order that a representative of the OCSO be allowed to attend, but not to obstruct or interfere with Mr. St. Peter's examination. Before performing his examination, Mr. St. Peter shall download a copy of the phone's memory and provide it to the OCSO, at the OCSO's expense.

### III. Plaintiffs' Motions to Quash

Plaintiffs have also filed a Motion to Quash Defendant's Subpoena to Metro PCS (docket no. 30), and a Motion to Quash Defendant's Subpoena to Verizon Wireless (docket no. 31), both of which concern subpoenas seeking information related to Plaintiff Pearce's cell phone records. In his Responses to each of these Motions, Defendant indicates that both of the disputed subpoenas have been withdrawn. (*See* Docket nos. 36 at 2; 37 at 2.) Because both of the disputed subpoenas have been withdrawn, the Court will deny Plaintiffs' Motions to Quash (docket nos. 30, 31) as moot.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel the Oakland County Sheriff to Comply with the Subpoena to Produce Cody Fuhrman's I-Phone is **GRANTED**. A representative from the Oakland County Sheriff's Office will produce Cody Fuhrman's phone for forensic examination by Mr. Mark St. Peter, at Computing Source, 29401 Stephenson Highway, Madison Heights, MI 48071, by close of business on February 28, 2017. A representative of the OCSO is allowed to attend, but not to obstruct or interfere with Mr. St. Peter's examination. Before performing his examination, Mr. St. Peter is ordered to download a copy of the phone's memory and provide it to the OCSO, at the OCSO's expense.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Quash Defendant's Subpoena to Metro PCS [30] and Motion to Quash Defendant's Subpoena to Verizon Wireless [31] are **DENIED.**

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: February 9, 2017          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date, and upon Nest Labs, Inc., at 3400 Hillview Avenue, Palo Alto, California, 94304.

Dated:  February 9, 2017         s/ Lisa C. Bartlett
                                 Case Manager