UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN PEARCE, individually
and as NEXT FRIEND of
BABY B, her infant child,

        Plaintiff,

vs.

        Case No. 16-11499
        HON. GEORGE CARAM STEEH

MICHAEL EMMI,

        Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND NON-PARTY THE OAKLAND COUNTY SHERIFF'S OFFICE'S MOTION FOR RECONSIDERATION/OBJECTION TO MAGISTRATE'S OPINION AND ORDER (DOC. 41)

This matter is presently before the Court on defendant Michael Emmi and non-party Oakland County Sheriff's Office's (OCSO) motion, (Doc. 41), for reconsideration/objection to Magistrate Judge Majzoub's Opinion and Order, (Doc. 39), dated February 9, 2017.

Pursuant to E.D. Mich. LR 7.1(h)(2), motions for reconsideration are typically decided without response briefs or oral argument. Here, however, defendant Emmi and the OCSO's motion raised four issues not previously presented to Magistrate Judge Majzoub. The Court, therefore, ordered additional briefing and held oral argument on March 28, 2017. For the

- 1 -

reasons stated below, defendant Emmi and the OCSO's motion is GRANTED IN PART AND DENIED IN PART.

## I. Background

Plaintiff Megan Pearce, individually and as next friend of Baby B, her infant child, sued defendant Michael Emmi, asserting claims under 42 U.S.C. § 1983, the Federal Wiretapping Act, and provisions of Michigan state law. Plaintiff alleges that defendant viewed her breastfeeding her infant in the nude on two occasions in March 2016, by accessing a "Nest Cam" application installed on the iPhone of Cody Fuhrman, Plaintiff's fiancé, after Fuhrman's phone was seized by the OCSO.

Nest Cam is an electronic monitor that provides a live audio visual stream. The monitor pairs with an application that users download onto electronic devices like cellphones and tablets. The monitor has a motion sensor and sends a notification to the application installed on the user's electronic device(s) when it detects motion in the room. After receiving such a notification, the user may open the application and observe the audio and video captured by the monitor. The monitor has a small green light, which flashes when the audio and visual live stream is monitored through the Nest Cam application on an electronic device.

Plaintiff downloaded the Nest Cam application on three devices – her cellphone, her iPad tablet, and Fuhrman's cellphone.

On or about March 2, 2016, Defendant Emmi led a search which resulted in Fuhrman's arrest and the seizure of his cell phone. The phone was purportedly logged into the Oakland County Jail Computer Crime Lab that same day.

On or about March 3, 2016, Plaintiff noticed the monitor's green light flashing while she lay naked breastfeeding Baby B. Plaintiff's iPad was turned off and her iPhone was not monitoring the Nest Cam. Therefore, Plaintiff questioned whether Fuhrman's iPhone – the only remaining device paired with her Nest Cam monitor – was being used by a stranger to watch her nurse Baby B. Plaintiff purportedly used the "Find my iPhone" application to determine that Fuhrman's iPhone was located at the address where defendant Emmi resides.

Plaintiff seeks to examine Fuhrman's iPhone to collect evidence regarding her assertion that the iPhone was active at the times that she and her infant were spied upon. Plaintiff delivered a subpoena to the OCSO on July 15, 2016. The OCSO objected, claiming that the iPhone was related to an ongoing criminal investigation. Although Fuhrman is expected to plead guilty to state narcotics offenses, the OCSO retains his

iPhone as evidence, claiming that Furhman may withdraw his guilty plea within six months of his sentencing. Plaintiff filed a Motion to Compel the OCSO to Comply with the Subpoena to Produce Fuhrman's iPhone. (Doc. 15). The OCSO opposed the motion, arguing that the examination would destroy the chain of custody and adversely affect their ability to prosecute Fuhrman. (Doc. 19 at PageID 154-55). The motion was referred to Magistrate Judge Majzoub and determined without oral argument pursuant to E.D. Mich. LR 7.2(f)(2).

Magistrate Judge Majzoub granted plaintiff's Motion to Compel, finding that the relevance of the information potentially stored on the iPhone outweighed the risks identified in the OCSO's response, and ordered that the iPhone be produced by the OCSO for plaintiff's expert examination. (Doc. 39 at PageID 362). Additionally, "[t]o address the OCSO's valid concerns" Magistrate Judge Majzoub adopted a portion of the OCSO's alternative proposal, ordering that "a representative of the OCSO be allowed to attend, but not to obstruct or interfere with Mr. St. Peter's examination." (Doc. 39 at PageID 363).[1] An OCSO representative was ordered to produce Fuhrman's phone for forensic examination by plaintiff's expert, Mark St. Peter, at Computing Source, 29401 Stephenson

---

[1] This order also denied two Motions to Quash, (Doc. 30, Doc. 31). Defendant and the OCSO do not move for reconsideration of these denials.

Highway, Madison Heights, MI 48071, by close of business on February 28, 2017. (Doc. 39 at PageID 362-63). St. Peter was ordered to download a copy of the phone's memory and provide it to the OCSO, at the OCSO's expense, before performing his examination. (*Id.*).

Defendant Emmi and the OCSO now request the Court to order (1) St. Peter to view and note the open applications on Fuhrman's iPhone prior to conducting the examination; (2) the OCSO to remove the iPhone's SIM card prior to the forensic examination; (3) that Emmi's computer forensic examination expert may attend St. Peter's exam; and (4) that the iPhone be returned to the OCSO immediately following the examination.

## II. Analysis

Plaintiff opposes defendant's request to permit his computer forensic examination expert to attend St. Peter's exam. (Doc. 44 at PageID 393). Plaintiff does not object to defendant Emmi and the OCSO's three other requests, but notes "that requiring Plaintiff's expert to turn over information to the OCSO, which is still involved in a criminal prosecution of Mr. Fuhrman, would allow the OCSO to obtain information without a warrant and implicate Mr. Fuhrman's Fourth amendment rights." (Doc. 44 at PageID 393).

The Court, therefore, must determine who may attend St. Peter's examination of Fuhrman's iPhone, and what they may rightfully observe.

### A. The OCSO Representative

Plaintiff does not contest an order requiring their expert to view and note the open applications on Fuhrman's phone prior to conducting the examination. But, the OCSO requests that their representative be permitted to view this information. (Doc. 41 at PageID 372) (seeking this information for "the parties and *OCSO,*" so "Defendant/*OCSO*" can determine which applications were open and requesting an order allowing "*all parties present* at the exam to see the open applications prior to beginning the exam.") (emphasis added).

The Court may not grant such an order at this time. The OCSO has not provided the Court with sufficient proof that its representative may legally view and gather information on Fuhrman's iPhone. In *Riley v. California*, 134 S. Ct. 2473 (2014), the Supreme Court held that it "is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id.* at 2493.

The OCSO's response to the Motion to Compel and its Motion for Reconsideration did not state whether it has – or ever had – a warrant to

search Fuhrman's iPhone. The Court, therefore, invited the OCSO to reply with information "on their ability to search Fuhrman's iPhone under *Riley v. California*, 134 S. Ct. 2473 (2014), as it pertains to their request to permit an OCSO representative to view the iPhone's open applications prior to St. Peter's examination." (Doc. 43 at PageID 390). The OCSO did not address this issue in their reply. At oral argument, defendant Emmi's counsel asserted that Fuhrman's iPhone was seized with a valid warrant for any and all information relating to a narcotics investigation.

This representation is insufficient. The warrant has not been provided to the Court. It is not clear whether the warrant permits the search of the specified locations and any cell phones found there. Fuhrman's iPhone was seized on or about March 2, 2016. Therefore, even if the warrant did grant permission to search Fuhrman's iPhone, it is not clear whether the OCSO's probable cause grew stale in the intervening thirteen months. Further, Magistrate Judge Majzoub's order permitting an OCSO representative to attend, but not obstruct or interfere with St. Peter's examination, does not permit the OCSO to observe information on Fuhrman's iPhone without a valid search warrant or Fuhrman's consent.

The Court, therefore, provides further instruction on the ruling permitting an OCSO representative to attend St. Peter's examination. If it

is necessary for an OCSO representative to observe Fuhrman's iPhone throughout the entire examination in order to preserve the chain of custody, then the OCSO must comply have a search warrant that complies with *Riley* or have Fuhrman's consent. Otherwise, without a warrant or applicable exception to the warrant requirement, any information that the OCSO obtains during St. Peter's examination – either by viewing the iPhone or hearing St. Peter's discussion – may be obtained in violation of Fuhrman's Fourth Amendment rights.

**B. Defendant Emmi's Expert**

Plaintiff objects to defendant Emmi's request that his expert be permitted to attend St. Peter's examination, asserting that the exam is protected by Fed. R. Civ. P. 26(b)(3)(A) and (B) as well as the work product privilege. Plaintiff relies on *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289 (W.D. Mich. 1995), which interprets Rule 26 in ruling that core attorney work product presented to expert witnesses is not discoverable. Defendant responds that the work product privilege does not apply because St. Peter's examination will yield objective data rather than mental impressions.

Plaintiff's reliance on *Haworth* is imprudent. *Haworth* was decided in 1995. Rule 26 was amended in 2010. The amendments clarify the scope

of the work product privilege as it pertains to expert reports and communications.

Fed. R. Civ. P. 26 now provides in relevant part:

> **(b) Discovery Scope and Limits**
>
> . . .
>
> **(3) Trial Preparation: Materials.**
>
> **(A) Documents and Tangible Things.** Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> **(B) Protection Against Disclosure**. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.
>
> . . .
>
> **(4) Trial Preparation: Experts.**
>
> . . .
>
> **(C) Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses**. Rules 26(b)(3)(A) and (B)

> protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Rule 26(b)(4)(C) prohibits defendant's expert from observing St. Peter's examination. As plaintiff's forensic computer expert, St. Peter qualifies as a witness required to provide a report under Rule 26(a)(2)(B). Thus, any communications that plaintiff's counsel and St. Peter have during the examination, regardless of form, fall within the scope of Rule 26(b)(4)(C).

At oral argument, defense counsel raised concerns that defendant will not receive information about the examination unless their expert is in attendance. This view is misguided. Fed. R. Civ. P. 26 merely protects trial preparation materials and plaintiff's counsel's communications with St. Peter. It does not preclude the exchange of other information. Fed. R. Civ. P. 26 Advisory Committee's Note (2010) ("Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the

development, foundation, or basis of those opinions."). In fact, plaintiff is required to disclose this information by providing defendant with a written expert report containing St. Peter's opinions and all of the "facts or data considered by [St. Peter] in forming them." Fed. R. Civ. P. 26(a)(2)(b)(ii). Additionally, defendant could seek this information under Fed. R. Civ. P. 26(b)(4)(C)(ii), which permits discovery of communications identifying the facts or data provided by counsel while maintaining protection for "further communications about the potential relevance of the facts or data." Fed. R. Civ. P. 26 Advisory Committee's Note (2010).

Plaintiff implied that St. Peter will testify if this case proceeds to trial. Fed. R. Evid. 702 requires expert testimony to be "based on sufficient facts or data" and "the product of reliable principles and methods" which are "reliably applied. . . to the facts of the case." Therefore, although defendant's expert would not attend St. Peter's exam, defendant would receive information on the procedures and methods St. Peter employs. Defendant Emmi argues that there is a difference between reading about the "alleged procedures" and "observing the actual procedures." (Doc. 45 at PageID 401). There is a difference, but defendant is not entitled to the latter. Defendant may, however, "question [St. Peter] about alternative analyses, testing methods, or approaches to the issues on which [he is]

testifying, whether or not [he] considered them in forming the opinions expressed."  Fed. R. Civ. P. Advisory Committee's Notes (2010).

Finally, defendant Emmi argues that his expert will not be able to conduct their own examination because Fuhrman and plaintiff have not shared the passcode to Fuhrman's iPhone.  As such, defendant Emmi asserts that St. Peter's examination "is the only opportunity for the parties to view the extraction of the data from [Fuhrman's] phone."  (Doc. 45 at PageID 402).  It appears as though defendant Emmi is asserting a substantial need exception to Fed. R. Civ. P. 26(b)(4)(C)'s communication protection.  See Fed. R. Civ. P. 26(b)(3)(A)(ii).  "Under the amended rule, discovery regarding attorney-expert communications on subjects outside the three exceptions in Rule 26(b)(4)(C). . . is permitted only in limited circumstances and by court order."  Fed. R. Civ. P. 26 Advisory Committee's Note (2010).  "It will be rare for a party to be able to make such a showing given the broad disclosure and discovery otherwise allowed regarding the expert's testimony."  *Id.*  "Substantial need consists of the relative importance of the information in the documents to the party's case and the ability to obtain that information by other means."  *Stampley v. State Farm Fire & Cas. Co.,* 23 F. App'x 467, 471 (6th Cir. 2001) (internal

citations omitted).  "As a general rule, inconvenience and expense do not constitute undue hardship."  *Id.*

Defendant has not asserted a substantial need to permit their expert to attend St. Peter's exam.  Defendant will not be able to view the extraction of the data on Fuhrman's iPhone, but the relative importance of viewing the extraction of data is low.  The data itself is much more important, and defendant will receive it by other means, including plaintiff's required disclosures and deposing St. Peter.  Therefore, defendant's expert shall not be permitted to attend St. Peter's exam.

### III. Conclusion

Defendant Emmi and the OCSO's motion for reconsideration is GRANTED IN PART AND DENIED IN PART.

A representative of the OCSO will produce Cody Fuhrman's iPhone for forensic examination by plaintiff's expert, Mark St. Peter, at Computing Source, 29401 Stephenson Highway, Madison Heights, MI 48071, by close of business on May 31, 2017.  Before performing his examination, St. Peter is ordered to download a copy of the phone's memory and provide it to the OCSO, at the OCSO's expense.

Plaintiff's expert is ordered to view and note the open applications on Fuhrman's iPhone prior to conducting the examination.  The Court cautions

the OCSO that if its representative attending the examination views this information without a valid warrant to search Fuhrman's iPhone, or an applicable exception to the warrant requirement, such information may be obtained in violation of Fuhrman's Fourth Amendment rights.

The OCSO may remove Fuhrman's iPhone's SIM card prior to the examination.

Defendant Emmi's computer forensic expert is not permitted to attend St. Peter's exam.

Fuhrman's iPhone must be returned to the OCSO immediately following the examination.

IT IS SO ORDERED.

Dated: May 8, 2017

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 8, 2017, by electronic and/or ordinary mail.

s/Shawna Burns
Deputy Clerk