UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN PEARCE, individually
and as NEXT FRIEND of BABY B,
her infant child,

      Plaintiff,                                  Case No. 16-11499

v.                                                HON. GEORGE CARAM STEEH

Hazel Park Police Officer
MICHAEL EMMI, in his individual
capacity,

      Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DOC. 92)

Before the court is Defendant's motion for summary judgment, which has been fully briefed. The court heard oral argument on January 15, 2019. For the reasons explained below, Defendant's motion is denied.

BACKGROUND FACTS

Plaintiff Megan Pearce alleges that Defendant Michael Emmi spied on her by improperly accessing a video camera in the nursery of her child ("Baby B"). Emmi is employed by the City of Hazel Park Police Department and is assigned to the Oakland County Narcotics Enforcement Team. As part of an investigation into marijuana grow operations, Emmi was involved

- 1 -

in the execution of search warrants at locations connected to Cody Fuhrman, Plaintiff's fiancé. The searches took place on March 2, 2016. During one of the searches, Emmi took Fuhrman into custody and seized his iPhone.

Later that day, Emmi searched Plaintiff's home pursuant to a warrant. Plaintiff alleges that the search included Baby B's nursery, where a Nest video camera was plainly visible. The video camera can be monitored remotely through an iPhone application. The Nest iPhone app was installed only on Plaintiff's iPhone, her iPad, and Fuhrman's iPhone. The Nest camera has a motion sensor and sends an alert to the app when there is motion in the room being monitored: "Your camera noticed some motion in Kid's Room." The notification includes a prompt to allow immediate viewing of live video.

After completing the search, Emmi informed Plaintiff that Fuhrman had been detained. Emmi returned to his office at the Oakland County Sheriff's Department ("OCSD") to store the seized evidence until the next morning when the items could be logged. Emmi did not store Fuhrman's phone, however, but took it home with him. Emmi was able to access the contents of the phone and claims that he examined it in airplane mode. According to Plaintiff, however, carrier records show that the phone did

upload and download data that night, indicating that Emmi had taken the phone off airplane mode. *See* Doc. 99-6 at 1184-85; Doc. 101 at ¶¶ 9-10.

That night, approximately an hour or two after Emmi had left her home, Plaintiff noticed the green light flashing on the Nest camera in the nursery for about ten seconds. The flashing green light indicates that someone is watching the Nest camera's live video through the Nest application. Plaintiff later realized that neither her iPhone nor her iPad were monitoring the Nest camera at the time. She did not know whether Fuhrman's phone had been seized by the police, and became concerned that someone had watched her through the Nest camera by using Fuhrman's phone. Plaintiff attempted to use the "Find My IPhone" app to determine where Fuhrman's phone was located, but the phone was offline so she was unable to see its location.

On the morning of March 3, 2016, Emmi went to work at OCSD, taking Fuhrman's phone with him. Emmi logged the phone into evidence but did not store it as required. Instead, he kept it with him and examined it throughout the day.

Emmi took Fuhrman's phone with him when he went home for the day. Emmi took the phone off airplane mode sometime around 8:30 p.m. When asked if he activated the Nest camera at this time, he responded,

"not to my knowledge." Doc. 99-4 at 104. A memo produced by OCSD concluded that the phone had used data after being seized, including at 8:37 p.m. on March 3, 2016.[1]

As Emmi was viewing Fuhrman's phone at approximately 8:30 p.m. on March 3, it suddenly locked up and required a pass code to view. Emmi tried using Fuhrman's birthdate as a pass code, without success. After being locked out, Emmi kept the phone until March 4, 2016, when he logged the phone in to the computer crime lab at OCSD. Emmi did not inform anyone that he had kept Fuhrman's phone, that he had examined it, or that it had locked up.

On the evening of March 3, 2016, Plaintiff was breastfeeding Baby B in the nursery after taking a shower. She was wearing a towel around her waist and was nude from the waist up. She noticed that the green light on the Nest camera was blinking and became immediately concerned because she knew that her devices were not accessing the camera. Plaintiff placed Fuhrman's phone in "lost mode" at 8:37 p.m., which locked it. *See* Doc. 99-11. Plaintiff subsequently received two emails from Apple

---

[1] The document indicates that the data was downloaded on March 3, *2017*, which appears to be a typographical error.

indicating that Fuhrman's phone was locked at 8:37 p.m. and that the phone was located at an address in Macomb, Michigan.

The parties obtained data records for Fuhrman's phone from AT & T. According to Plaintiff, the records indicate that the phone was removed from airplane mode and that there were four data downloads and uploads from the phone at 8:37 and 8:39 p.m. on March 3, 2016. Defendant asserts that this data usage is explained by "background" data usage, which does not require active usage of the phone.

According to Defendant's expert, Adam Sorini, Fuhrman's phone could not have accessed the Nest app and viewed live video on March 3, 2016, because such access would have been reflected in the data on the phone. Based upon the data on Fuhrman's phone, Sorini opines that the phone last accessed the Nest app on March 1, 2016. Plaintiff's expert, Mark St. Peter, disagrees and opines that "the evidence supports the ... Phone accessed the Nest camera during the time periods that The Phone as in Detective Emmi's possession." Doc. 92-7 at 4. He will testify that because the viewing of the Nest camera was interrupted on March 3 when Plaintiff put Fuhrman's phone in "lost mode," the logging of information on the phone may also have been interrupted. St. Peter states in his affidavit that Sorini's testing did not take into account that the phone was "abruptly

disconnected from its carrier network" when Plaintiff put it into "lost mode" and that this abrupt termination would have "unknown effects" on the operation of apps, including the Nest app. *See* Doc. 101 at ¶7.

LAW AND ANALYSIS

Plaintiff filed this action on April 26, 2016, alleging that Defendant's video surveillance of her violated her Fourth Amendment rights, the federal wiretapping statute, 18 U.S.C. § 2511, and the Michigan eavesdropping statute, M.C.L. 750.539, and constituted an invasion of privacy under Michigan common law. Defendant seeks summary judgment on all of Plaintiff's claims based upon his expert's opinion that Fuhrman's phone did not access the Nest app when the phone was in Defendant's possession. *See* Doc. 92-6. Plaintiff counters that her expert will testify that the normal logging of data on the phone would have been interrupted when the phone was put in "lost mode." Doc. 101. Plaintiff further argues that the circumstantial evidence suggests that Defendant could have accessed the Nest app when Fuhrman's phone was in his possession.

Essentially, Defendant seeks to have the court accept his expert's opinion that he could not have accessed the Nest app while the phone was in his possession. Given the contrary opinion of Plaintiff's expert and the circumstantial evidence, however, the court may not grant a motion for

summary judgment on this basis.[2]  *See* Fed. R. Civ. P. 56.  When reviewing a motion for summary judgment, the court must view the facts and any reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Defendant's suggested "approach of weighing the credibility of the competing expert reports amounts to improper fact-finding." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005). "Indeed, competing expert opinions present the 'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." *Id.* citation omitted).  Because Defendant's motion is premised upon the court's acceptance of his expert's opinion that he did not access the Nest app, it will be denied. *See* Doc. 92 at 20-22.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment (Doc. 92) is DENIED.

Dated:  January 17, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

[2] Defendant has not challenged St. Peter's qualifications or the admissibility of his opinion under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (expert testimony must rest on a reliable foundation and be relevant to the task at hand). *See also* Fed. R. Evid. 702.

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 17, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk